UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

NITROCREAM LLC,

Plaintiff,

v.

CHILL-N NITROGEN ICE CREAM
FRANCHISING LLC, d/b/a CHILL-N
NITROGEN ICE CREAM and/or CHILL
N7 NITROGEN ICE CREAM, CHILL-N
ICE CREAM LLC, and BUZZED BULL
HOLDINGS LLC,

Defendants.

Civ. Case No. _____

COMPLAINT

Jury Trial Demanded

NitroCream LLC ("Nitro") for their Complaint for Patent Infringement and Breach of

Contract against Chill-N Nitrogen Ice Cream Franchising LLC ("CICF"), d/b/a Chill-N Nitrogen

Ice Cream and/or Chill N7 Nitrogen Ice Cream, and CHILL-N ICE CREAM LLC ("CI")

(collectively, "Chill-N"), and Buzzed Bull Holdings, LLC ("Buzzed Bull") (collectively,

"Defendants"), aver and allege as follows:

## PARTIES

1.       Plaintiff, Nitro, is a Limited Liability Company organized under the laws of the

State of Washington and having its principal place of business at 1869 S Wenatchee Ave,

Wenatchee, Washington, 98801-3820.

2.       Nitro is the owner and exclusive licensee of the reexamined U.S. Patent No.

7,455,868 C1 (the "'868 Patent"), which is attached hereto as Exhibit A.

3.       Defendant CICF is a limited liability company organized under the laws of the State

of Florida and having its principal place of business at 3051 NW 75th Avenue Miami, Florida

33122.  Upon information and belief, Defendant CICF does business under the trade names "Chill-

N Nitrogen Ice Cream" and "Chill N7 Nitrogen Ice Cream."

4.     Defendant CI is a limited liability company organized under the laws of the State of Florida and having its principal place of business at 11450 SW 84 Avenue Miami, Florida 33156.

5.     Defendant Buzzed Bull is a limited liability company organized under the laws of the State of Ohio and having its principal place of business at 8016 Tylers Way, West Chester OH 45069.

## NATURE OF THE ACTION AND PARTIES

6.     This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 101, et seq., against Defendants, who, in violation of 35 U.S.C. § 271, have made, used, sold, offered for sale, and/or imported machinery, equipment, and product that infringe one or more claims of the '868 Patent or otherwise induce or contribute to such infringements of the '868 Patent despite knowledge that such inducements and contributions infringe the patented claims thereof.  This is also an action for false patent marking under 35 U.S.C. §292 as to Defendant Chill-N.

7.     This is also an action for false advertising, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

8.     This Court has supplemental jurisdiction over Plaintiff's state law claims of breach of contract and unfair competition pursuant to 28 U.S.C. §§ 1338, 1367, in that the state law claims are so related to the federal claim as to form part of the same case or controversy.

## PLAINTIFF NITRO AND THE '868 PATENT

9.     The USPTO duly and legally issued the U.S. Patent No. 7,455,868 B2 to Robert Kennedy on November 25, 2008.  A true and correct copy of U.S. Patent No. 7,455,868 B2 (the version of the '868 Patent prior to reexamination) is attached as Exhibit B.

10.    Robert Kennedy is the principal and owner of Nitro.

11.    On November 29, 2018, a request for *ex parte* reexamination of U.S. Patent No. 7,455,868 B2 was filed with the United States Patent and Trademark Office ("USPTO").

2

12.     During the course of the *ex parte* reexamination, some of the claims of U.S. Patent No. 7,455,868 B2 changed and are now recited in the asserted '868 Patent. *Compare* Exhibit A (Reexamination Certificate) *with* Exhibit B.

13.     On October 26, 2020, the reexamination concluded and the '868 Patent remained valid and enforceable by the USPTO.

14.     Nitro is the assignee of the '868 Patent with ownership of all substantial rights and interests therein.

15.     Nitro is the designer and manufacturer of the Nitrocream G6 and T1 dispenser, each of which is a machine system that enables its user to create ice cream, gelato, and frozen cocktails with the use of cryogenic liquified gas such as, for example, liquid nitrogen.

16.     Nitro instructs, trains, and otherwise requires those who purchase its G6 and T1 machine systems to practice its proprietary process of making frozen foods using cryogenic liquified gas that is disclosed and claimed in the '868 Patent:

> A method of making an ice cream product, comprising:
>
> placing ingredients of the ice cream product into a container having an open top;
>
> using a control valve to selectively dispense a cryogenic liquefied gas from a cryogenic tank into the container through a line having an opening mounted above the ingredients of the ice cream product;
>
> mechanically mixing, with a powered mixer, the ingredients with the cryogenic liquefied gas in the open top container while flowing the cryogenic liquefied gas through the line and through the opening mounted above the ingredients into the open top container containing the ingredients to produce the ice cream product;
>
> freezing, with the cryogenic liquefied gas, the ingredients

3

1           while mixing the ingredients with the powered mixer to produce the

2           ice cream product; and

3           transferring, after freezing, the ice cream product from the

4           container to a serving container;

5           wherein a sufficient amount of the liquified gas

6           controlled by the control valve is introduced into the container to

7           produce a visible amount of cryogenic vapor flowing from the open

8           top of the container, and

9           wherein the powered mixer comprises a support

10          having  bottom surface positioned on a work surface, the bottom

11          surface being configured to support the container above the work

12          surface.

13 *See* Exhibit A at Claim 1 (internal brackets, bracketed text, and all emphasis via italics omitted).

14       17.    Nitro sells its machines and licenses the practice of its '868 Patent methods all over

15 the world, including to establishments located in Washington, California, Colorado, Utah, Arizona,

16 Texas, Missouri, Georgia, Wisconsin, Illinois, New York, New Jersey, Massachusetts, New

17 Hampshire, North Carolina, Louisiana Florida, Canada, London, Dubai, Nepal, Italy, Singapore,

18 Iraq, Sri Lanka, Belize, Thailand, Oman, Lebanon, Hong Kong, and the Philippines.

19       18.    Nitro advertises, markets, and educates its customers, prospective customers, and

20 commercial competitors with the following:

21      •   "The NitroCream G6 along with our Patented Process is designed for your store,

22          bar, or restaurant." (https://www.nitrocream.com/information-and-faq, last viewed

23          on May 3, 2024).

24      •   "With our Patented Process, you are able to produce a superior quality ice cream

25          dessert or cocktail unmatched by any in the industry."

26          (https://www.nitrocream.com/information-and-faq, last viewed on May 3, 2024).

- "I have my own equipment from another company so do I need a license to use the NitroCream process? If you use the NitroCream process, which is Patented, then you need a license from NitroCream LLC.  Even if you use other equipment, you may infringe upon our Patented Process." (https://www.nitrocream.com/information-and-faq, last viewed on May 3, 2024).

*See* Exhibit C.

19.    Nitro is a competitor of Buzzed Bull and Chill-N.

20.    Nitro's '868 Patent methods have yielded tremendous financial success to Nitro in the millions of dollars, which come from Nitro's licensees and customers for the use of its patent-practicing equipment.  Nitro is also the recipient of industry acclaim in authoritative food text books, such as Modernist Cuisine – The Art and Science of Cooking by Nathan Myrhrvold, Chris Young, and Maxim Bilet.

## DEFENDANT BUZZED BULL

21.    Pursuant to a June 26, 2017 ▆Confidential Information▆ Agreement (the "Buzzed Bull Agreement"), Nitro granted Defendant Buzzed Bull a ▆Confidential Information▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. *See* Exhibit D at ¶ 2.

22.    Nitro and Defendant Buzzed Bull agreed that the law governing any action to enforce or interpret the Buzzed Bull Agreement shall be that of the state of Washington and that jurisdiction and venue for any such actions shall lie in Chelan County, Washington. *See* Exhibit D at ¶ 15.

23.    According to the Buzzed Bull Agreement, Defendant Buzzed Bull "▆Confidential Information▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆" *See* Exhibit D, ¶3.  The Buzzed Bull Agreement further states that "[n]otwithstanding anything to the contrary set forth herein, Licensee

1   [Defendant Buzzed Bull] may, with advance written notice to NitroCream, **Confidential Information**

2   ████████████████████████████████████████████████████████████

3   ████████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████████ "

5   Id. at ¶4.

6   24.   Based on the following website named "www.buzzedbullcreamery.com/locations/"

7   (last visited April 30, 2024), attached as Exhibit E hereto, Defendant Buzzed Bull has store

8   locations outside of **Confidential Information** in which it directs, instructs, or

9   otherwise authorizes the use of **Confidential Information** machines **Confidential Information** and each of which being

10  configured to practice, and do practice, the methods of the '868 Patent, such as, for example, 7135

11  E Camelback Rd, Ste 151 Scottsdale, AZ 85251, Coastal Way Plaza (Cortez Blvd. & Mariner

12  Blvd.) 13107 Cortez Blvd. Brooksville, FL 34613, 2660 Sac Au Lait Ln, Suite C, Denham Springs,

13  LA 70726, 755 Friedens Rd St. Charles, MO 63303, 6052 OH-48 Maineville, OH 45039, 50 S.

14  Liberty Street, Suite 150, Powell, OH 43065, 595 King St Suite 130, Charleston, SC 29403, 3239

15  Parkway Pigeon Forge, TN 37863, and 529 S Texas Blvd Weslaco, TX 78596 (collectively

16  "Buzzed Bull Stores").

17  25.   Defendant Buzzed Bull's instructions, authorizations, guidance, and/or requirement

18  to use equipment specifically designed to practice the methods of one or more claims of the '868

19  Patent takes place with knowledge that the methods it instructs or contributes to the practice thereof

20  are infringements of one or more claims of the '868 Patent.

21  26.   Defendant Buzzed Bull makes, uses, offers for sale, or sells ice cream products

22  made by the methods claimed in the '868 Patent and/or instructs and/or contributes to others in

23  one or more of the Buzzed Bull Stores infringing one or more claims of the '868 Patent and in

24  violation of the Buzzed Bull Agreement.

25

26

**DEFENDANT CHILL-N**

27.     Pursuant to an October 17, 2018 Agreement ███████████ (the "Chill-N

Agreement"), Nitro granted Defendants CICF and CI a ████████████████████

███████████████████████████████████████████████████████████████████████

██████████████████████████████████████. *See* Exhibit F at ¶2.

28.     Nitro and Defendants CICF and CI each agreed that the law governing any action

to enforce or interpret the Chill-N Agreement shall be that of the state of Washington and that

jurisdiction and venue for any such actions shall lie in Chelan County, Washington. *See* Exhibit F

at ¶ 12.

29.     Pursuant to the Chill-N Agreement, Defendant CICF agreed that it "████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

████████." Id. at ¶6.

30.     On November 29, 2018, Mr. Joseph A. Mahoney of Mayer Brown LLP requested

an *ex parte* reexamination of the '868 Patent by the United States Patent and Trademark Office

("USPTO") on behalf of an un-named small entity.

31.     On January 17, 2019, the USPTO determined that the reexamination request raised

a substantial new question of patentability affecting the claims of the '868 Patent.

32.     On May 20, 2020, the USPTO issued a final rejection to the '868 Patent claims.

33.     On July 6, 2020, Mr. Daniel Golik ("Golik"), on behalf of Chill-N, wrote a letter to

Mr. Robert Kennedy of Nitro that Chill-N would be terminating the terms of the Chill-N

Agreement because "NitroCream's patent was found invalid on July 12, 2019 and that NitroCream

1    agrees with this finding due to the subsequent changes it made to the original claims." *See* Exhibit

2    G (the "Golik Letter").

3          34.    The Golik Letter was sent to Mr. Robert Kennedy at Nitro's business address at

4    P.O. Box 394, Rock Island, Washington 98850.

5          35.    On October 26, 2020, the '868 Patent emerged from reexamination with valid and

6    enforceable patent claims. *See* Exhibit A (Reexamination Certificate for the '868 Patent).

7          36.    On December 2, 2020, Mr. Robert Kennedy sent an email on behalf of Nitro to

8    Golik at danielgolik@chilln.com stating, "Dear Daniel, Hope all is well with you.  Notice came to

9    me on the receiving of your email and certified letter for the termination of our license agreement

10    between NitroCream and Chill-N.  I wish you had checked with your attorney about this or called

11    us to question what was going on before you had taken this action.  You see, what is publicly

12    posted by the USPTO is not what is actually going on behind the scenes in cross examinations,

13    what claims are in allowance/revised/granted.  Check the USPTO and you will see the newest

14    additions/revisions/amendments that have been granted for our Patent."

15          37.    In other words, Golik knew as early as December 2, 2020 that the '868 Patent was

16    still valid and enforceable, contrary to the contentions in the Golik Letter.

17          38.    Chill-N has failed to provide Nitro with any payments pursuant to the Chill-N

18    Agreement since July 6, 2020.

19          39.    Chill-N has knowingly failed to comply with the Chill-N Agreement since July 6,

20    2020.

21          40.    Chill-N has knowingly failed to comply with the Chill-N Agreement since

22    December 2, 2020.

23          **DEFENDANT CHILL-N'S WILLFULL ANTICOMPETITIVE ACTIVITIES**

24          41.    In a May 6, 2021 video, Golik, co-founder of Chill-N, explains the process that

25    Chill-N uses to make its ice cream. *See*  https://www.youtube.com/watch?v=eO6G5LpOUW0 (last

26    visited, May 3, 2024).  This website is evidence that Chill-N practices "a method of making an ice

1    cream    product….”    Other    websites    that    evidence    Chill-N's    practices    are

2    https://www.youtube.com/watch?v=IqSN4icsdbk    (last    visited,    May    3,    2024)    and

3    https://www.youtube.com/watch?v=JK0TnftZFQY (last viewed May 3, 2024).

4          42.    Chill-N's "method of making an ice cream product…" includes a step of "placing

5    ingredients of the ice cream product into a container having an open top…."



https://www.youtube.com/watch?v=eO6G5LpOUW0
(last viewed May 3, 2024) at 0:54-0:56

15          43.    Chill-N's "method of making an ice cream product…" includes "solid ingredients,

16    and the step of mechanically mixing includes mixing the solid ingredients in the open-top

17    container."

18          44.    Chill-N's "method of making an ice cream product…" involves "at least one of

19    frozen fruit and hard candy."

1

2

3

4

5

6

7

8

9

10

11

12



https://www.youtube.com/watch?v=JK0TnftZFQY (last viewed May 3, 2024) at 0:10 (frozen fruit annotated in purple boxes and hard candy in yellow boxes)

13   *See* also https://www.chillnicecream.com/menu-pages/menu (last viewed May 3, 2024).

14   45.   Chill-N's "method of making an ice cream product…" includes a step of "using a

15   control valve to selectively dispense a cryogenic liquefied gas from a cryogenic tank into the

16   container through a line having an opening mounted above the ingredients of the ice cream

17   product…."

18

19

20

21

22

23

24

25

26




| https://www.youtube.com/watch?v=eO6G5Lp OUW0 (last viewed May 3, 2024) at 0:41 (red arrow annotations supplied) | https://www.youtube.com/watch?v=eO6G5Lp OUW0 (last viewed May 3, 2024) at 1:26-1:33 (red arrow annotations supplied) |
| --- | --- |

46.     While "using a control valve to selectively dispense a cryogenic liquefied gas from a cryogenic tank into the container…," Chill-N's "method of making an ice cream product…" creates "a sufficient amount of the liquified gas controlled by the control valve…" and that liquified gas controlled by the control valve "is introduced into the container to produce a visible amount of cryogenic vapor flowing from the open top of the container… ."

47.     The "liquified gas" in Chill-N's "method of making an ice cream product…" is "liquified nitrogen" that is mixed in sufficient amount "to surround at least most of the container."

48.     Chill-N's "method of making an ice cream product…" involves "positioning the container in a place in a food service establishment where the vapor is visible to a customer" and "where the vapor can be touched by a customer."

11

1
2
3
4
5
6
7
8
9
10



https://www.youtube.com/watch?v=eO6G5LpOUW0 (last viewed May 3, 2024) at 2:08

11
12
13
14
15
16
17
18
19
20
21



22   https://www.yelp.com/biz_photos/chill-n-nitrogen-ice-cream-coral-springs-coral-springs-3?select=WvKRe2D4IeIPtfflDh316g (last viewed May 10, 2024)
23

24   49.   Chill-N's "method of making an ice cream product…" includes a step of

25   "mechanically mixing, with a powered mixer, the ingredients with the cryogenic liquefied gas in

26   the open top container while flowing the cryogenic liquified gas through the line and through the

opening mounted above the ingredients into the open top container containing the ingredients to produce the ice cream product…."



| https://www.youtube.com/watch?v=eO6G5LpOUW0 (last viewed May 3, 2024) at 0:40-0:44 | https://www.youtube.com/watch?v=eO6G5LpOUW0 (last viewed May 3, 2024) at 0:54-1:02 |
|---|---|

50.    Chill-N's "method of making an ice cream product…" includes a "powered mixer" that has "a support having a bottom surface positioned on a work surface, the bottom surface being configured to support the container above the work surface."



https://www.youtube.com/watch?v=eO6G5LpOUW0 (last viewed May 3, 2024) at 1:08 (annotations supplied)

51.    Chill-N's "method of making an ice cream product…" includes a step of "freezing, with the cryogenic liquified gas, the ingredients while mixing the ingredients with the powered

13

mixer to produce the ice cream product," and "transferring, after freezing, the ice cream product from the container to a serving container…."



| https://www.youtube.com/watch?v=eO6G5LpOUW0 (last viewed May 3, 2024) at 0:54-1:02 | https://www.youtube.com/watch?v=eO6G5LpOUW0 (last viewed May 3, 2024) at 0:45-0:47 | https://www.youtube.com/watch?v=eO6G5LpOUW0 (last viewed May 3, 2024) at 1:01-1:03 |
| --- | --- | --- |

52.     Chill-N's "method of making an ice cream product…" also involves the "serving container containing the mixed frozen ingredients [being] passed to a customer."



https://www.youtube.com/watch?v=eO6G5LpOUW0 (last viewed May 3, 2024) at 2:17

53.     The "container" in Chill-N's "method of making an ice cream product…" is configured to become frosted during the freezing."

1
2
3
4
5
6
7
8
9
10
11



https://www.youtube.com/watch?v=JK0TnftZFQY (last viewed May 3, 2024) at 0:28

12

13      54.     Since at least March 29, 2021 to the present, Defendant Chill-N advertises to its

14  customers and instructs its franchisees, partners, subsidiaries, affiliates, and/or its agents to

15  advertise to customers and other potential franchisees and/or licensees that Chill-N "operates under

16  patent & patent pending processes."

17
18
19
20
21
22
23
24
25
26



https:// https://www.youtube.com/watch?v=IqSN4icsdbk (last viewed
May 3, 2024) at 2:46-2:482:48

15

55.    In its May 25, 2022 Franchise Disclosure Document ("FDD") made pursuant to 16 C.F.R. §§ 436, 437, Chill-N states, "We do not own any registered patents or copyrights which are material to the franchise, however, we claim common law copyright and trade secret protection for several aspects of the franchise System including our Operations Manual, recipes, advertising, and business materials."  *See* Exhibit H at p. 34, Item 34 – "Patents, Copyrights and Proprietary Information".

56.    Despite Chill-N's knowledge that its methods practice the claims of the '868 Patent, Chill-N has failed and continues to fail to inform its franchisees and/or potential licensees of the existence of the '868 Patent.  *See* id.

57.    Despite Chill-N's knowledge that its methods practice the claims of the '868 Patent, Chill-N has failed and continues to fail to inform its franchisees and/or potential licensees of the materiality of the '868 Patent to the methods employed by Chill-N's franchisees, partners, subsidiaries, affiliates, agents, and/or licensees.  *See* id.

58.    According to § 3.8 of the Chill-N Nitrogen Ice Cream Franchising, LLC Franchise Agreement (the "Chill-N Franchise Agreement"), which is attached as an addendum to Chill-N's FDD, Chill-N mandates that "Franchisee must pay an on-going intellectual property fee to Franchisor ***or its designated third-party vendor*** for the use of certain aspects of the System, including the Patent ("IP Fee"). The IP Fee is currently $100 per month." *See* id. at p. 111 (emphasis added).

59.    Nitro has never received any of the IP Fee Chill-N charges its franchisees and/or licensees.

60.    Upon information and belief, Chill-N has never instructed its franchisees to send Nitro the IP Fee Chill-N charges for the franchisee's and/or licensee's use of Nitro's '868 Patent methods.

61.    Chill-N's representation to its franchisees, partners, subsidiaries, affiliates, agents, and/or licensees that Chill-N "operates under patent & patent pending processes" and its mandate

that its franchisees, partners, subsidiaries, affiliates, and/or its agents pay an IP Fee of $100 per month for the "Patent" that Chill-N admittedly does not own nor has ever owned is knowingly false and misleading.

62.     Upon information and belief, Chill-N's materially false representation to its franchisees, partners, subsidiaries, affiliates, agents, and/or licensees that Chill-N "operates under patent & patent pending processes" and its mandate that its franchisees, partners, subsidiaries, affiliates, agents, and/or licensees pay an IP Fee of $100 per month for the "Patent" induces franchisees to work with Chill-N as opposed to Nitro.

63.     Upon information and belief, as of the date of this Complaint, Chill-N does not own any patent or patent-pending processes for methods and/or equipment for making ice cream using cryogenic liquified gas.

64.     Upon information and belief, as of the date of this Complaint, Chill-N is not a licensee of any patent or patent-pending processes for methods and/or equipment for making ice cream using cryogenic liquified gas.

65.     Upon information and belief, Golik, by virtue of his delivery of the July 6, 2020 Golik Letter, knew that Chill-N terminated its license to the '868 Patent.

66.     Upon information and belief, Golik, by virtue of his delivery of the July 6, 2020 Golik Letter and his knowledge of the Chill-N Agreement, knew that Chill-N had no license to use the '868 Patent methods on or after July 6, 2020.

67.     Upon information and belief, Golik, by virtue of his delivery of the July 6, 2020 Golik Letter, the December 2, 2020 email from Mr. Robert Kennedy, and Golik's knowledge of the Chill-N Agreement, knew that Chill-N had no license to use the '868 Patent methods on or after December 2, 2020.

68.     Despite knowledge that it had no license to use the '868 Patent methods on July 6, 2020, Chill-N instructed its employees, franchisees, partners, subsidiaries, affiliates, agents, and/or

1    licensees to falsely advertise to consumers that its method of making ice cream using cryogenic

2    liquified gas was protected by a patent and a patent-pending process.

3        69.    Upon information and belief, Chill-N, its managing members, directors, and

4    controlling employees failed to send any writing to Chill-N's franchisees in accordance with

5    §4.19.10 of the Chill-N Franchise Agreement instructing the franchisee to "cease all use of the

6    Patent in time frames as required by Franchisor in writing." *See* Exhibit H at p. 113.

7        70.    Upon information and belief, as of July 6, 2020, Chill-N, its managing members,

8    directors, and controlling employees failed to send any writing to Chill-N's franchisees in

9    accordance with §4.1.9.10 of the Chill-N Franchise Agreement instructing the franchisee to "cease

10    all use of the Patent in time frames as required by Franchisor in writing." *See* id.

11        71.    Upon information and belief, Golik failed to seek advice of counsel in directing

12    Chill-N and its employees, franchisees, partners, subsidiaries, affiliates, agents, and/or licensees

13    to tell the public that Chill-N's methods of making ice cream with cryogenic liquified gas were

14    protected by a patent or a patent-pending process when Golik knew that he had personally

15    terminated Chill-N's license to the '868 Patent on July 6, 2020.

16        72.    Upon information and belief, Golik, disregarded the '868 Patent when he directed

17    Chill-N and its employees, franchisees, partners, subsidiaries, affiliates, agents, and/or licensees

18    to tell the public that Chill-N's methods of making ice cream with cryogenic liquified gas were

19    protected by a patent or a patent-pending process despite knowing that he had personally

20    terminated Chill-N's license to the '868 Patent on July 6, 2020.

21        73.    Upon information and belief, Golik, disregarded the '868 Patent when he directed

22    Chill-N to allow its employees, franchisees, partners, subsidiaries, affiliates, agents, and/or

23    licensees to continue to use the claimed methods of the '868 Patent, despite terminating Chill-N's

24    license to the '868 Patent, by failing to send a writing to any of them pursuant to §4.1.9.10 of the

25    Chill-N Franchise Agreement.

26

74. Upon information and belief, Golik, disregarded the '868 Patent when he directed Chill-N to allow its employees, franchisees, partners, subsidiaries, affiliates, agents, and/or licensees to continue to use the claimed methods of the '868 Patent without sending the writing pursuant to §4.1.9.10 of the Chill-N Franchise Agreement and despite knowing that Chill-N does not own a patent or a pending patent for its methods of making ice cream using cryogenic liquified gas.

75. Chill-N knew, should have known, and/or willfully blinded itself to the fact that Nitro, a competitive company, advertises its competitive cryogenic liquified gas ice cream making equipment to the public, including consumers, prospective consumers, prospective licensees, and competitors, by referring to its patented process that produces "superior quality ice cream" and that in order for others to practice the patented process a license from Nitro is required:

- "The NitroCream G6 along with our Patented Process is designed for your store, bar, or restaurant." ([https://www.nitrocream.com/information-and-faq](https://www.nitrocream.com/information-and-faq), last viewed on May 3, 2024).

- "With our Patented Process, you are able to produce a superior quality ice cream dessert or cocktail unmatched by any in the industry."
  ([https://www.nitrocream.com/information-and-faq](https://www.nitrocream.com/information-and-faq), last viewed on May 3, 2024).

- "I have my own equipment from another company so do I need a license to use the NitroCream process? If you use the NitroCream process, which is Patented, then you need a license from NitroCream LLC.  Even if you use other equipment, you may infringe upon our Patented Process."
  ([https://www.nitrocream.com/information-and-faq](https://www.nitrocream.com/information-and-faq), last viewed on May 3, 2024).

76. Chill-N does not own a patent for its methods of making ice cream using cryogenic liquified gas.

77. Chill-N uses the word "patent" in connection with its cryogenic liquified gas ice cream making processes to induce the public to believe that Chill-N's method of making ice cream

1  using cryogenic liquified gas or the ice cream products made thereby are the same as or superior

2  to competitors, like Nitro.

3      78.    Chill-N uses the word "patent" in connection with its cryogenic liquified gas ice

4  cream making processes to induce the public to believe that its method of making ice cream using

5  cryogenic liquified gas or the ice cream products made thereby are protected by a patent.

6      79.    Chill-N uses the word "patent" in connection with its cryogenic liquified gas ice

7  cream making processes to induce the public, including its franchisees, licensees, employees,

8  agents, any of whom could be potential customers and/or licensees of Nitro, to believe that Chill-

9  N's method of making ice cream using cryogenic liquified gas or the ice cream products made

10  thereby are protected by a patent for which an IP Fee is required to be paid pursuant to the Chill-

11  N Franchise Agreement.

12      80.    Chill-N mandates the payment of an IP Fee from franchisees to induce them to

13  believe that Chill-N has a patent in connection with its cryogenic liquified gas ice cream making

14  processes.

15      81.    Chill-N mandates the payment of an IP Fee from franchisees to induce them to

16  believe that Chill-N's method of making ice cream using cryogenic liquified gas or the ice cream

17  products made thereby are protected by a patent.

18      82.    Even when authorized by Nitro to use the '868 Patent, Chill-N did not have Nitro's

19  consent to mark the word "patent" on Chill-N's cryogenic liquified gas ice cream making

20  establishments.

21      83.    Chill-N uses the word "patent-pending" in connection with its cryogenic liquified

22  gas ice cream making processes to induce the public to believe that its method of making ice cream

23  using cryogenic liquified gas or the ice cream products made thereby are protected by a pending

24  patent application.

25      84.    Chill-N does not own a pending patent application for its methods of making ice

26  cream using cryogenic liquified gas.

85.    Pursuant to § 6.2 of the Chill-N Franchise Agreement, Chill-N requires its franchisees to agree that "Franchisor will provide Franchisee with specifications and requirements for the equipment required for the opening of Franchisee's Franchised Business. Franchisor will provide Franchisee with plans and specifications for the layout and design of a prototypical Franchised Business." *See* id. at p. 115.

86.    Pursuant to §7.6.2.1 of the Chill-N Franchise Agreement, Chill-N requires each franchisee to "acknowledge[] that such recipes, preparation techniques and processes are integral to the System and failure to strictly adhere to such recipes, preparation techniques and processes (including the handling and storage of both raw ingredients, such as meat, produce, and dairy items, and fully prepared food items) will be detrimental to the System and Proprietary Marks and will constitute a default of this Agreement. Further, Franchisee may only provide catering services to customers with the prior written consent of Franchisor.  Franchisee shall not provide any services granted under this Agreement through a mobile unit."  *See* Exhibit H at p. 119.

87.    Pursuant to §7.16 of the Chill-N Franchise Agreement, Chill-N requires each franchisee to "acknowledge[] that Franchisor has developed the System to offer and sell products that will distinguish the Franchised Business from other businesses that offer similar products valued at different prices and with less attention paid to product quality and customer service. Franchisee agrees to offer products and services and to operate the Franchised Business in such a manner that emulates and enhances the image Franchisor intends for the System. Franchisee further acknowledges and agrees that each aspect of the System is important not only to Franchisee but also to Franchisor and to other System franchisees in order to maintain the highest operating standards, achieve system-wide uniformity and increase the demand for the products sold and services rendered by System franchisees. Franchisee agrees to comply with the standards, specifications and requirements Franchisor set forth in order to uniformly convey the distinctive image of a Franchised Business." Id. at p. 124.

88.    Chill-N knew that Nitro developed the methods in the System that Chill-N uses to offer products and services to operate the Franchised Business.

89.    Chill-N uses Nitro's cryogenic liquified gas-based ice cream making processes as a way to "distinguish the Franchised Business from other businesses that offer similar products valued at different prices and with less attention paid to product quality and customer service."

90.    Nitro has suffered and continues to suffer a competitive injury as a result of Chill-N's willful patent infringements, false patent marking, false advertising, and unfair competition because franchisees interested in working with or becoming licensees of Nitro would be led to believe that Chill-N, like Nitro, also owns a patent or pending patent for cryogenic liquified gas-based ice cream making processes, when the same is not true.

91.    Nitro has suffered and continues to suffer a competitive injury as a result of Chill-N's acts and false marking and false advertising because franchisees interested in working with Nitro would be led to believe that Chill-N has a license or has authority to make ice cream using cryogenic liquified gas in the same and substantially same way as Nitro, when the same is not true.

92.    Nitro has suffered and continues to suffer a competitive injury as a result of Chill-N's acts and false marking and false advertising, such as through loss of customers, franchisees, licensees, agents, partners, sales, profits, and other cognizable competitive harms in the states and countries where it has sold its equipment, licensed its '868 Patent methods, and/or has attempted to sell its equipment and/or license its '868 Patent methods and the equipment to accomplish the same.

**DEFENDANT BUZZED BULL'S WILLFULL ANTICOMPETITIVE ACTIVITIES**

93.    Buzzed Bull on its website, https://www.buzzedbullcreamery.com/ (last visited May 3, 2024), advertises that it makes cryogenic liquified gas ice cream and milkshakes, which evidences that Buzzed Bull practices "a method of making an ice cream product… ."  Other websites          depicting          Buzzed          Bull's          methods          are

1     https://www.youtube.com/watch?v=2TSXHbM0PH8    (last  visited  May  3,  2024)  and

2     https://www.youtube.com/watch?v=vOjsQc6u2ZA (last visited May 3, 2024).

3          94.    Buzzed Bull's "method of making an ice cream product…" includes a step of

4     "placing ingredients of the ice cream product into a container having an open top…."



https://www.youtube.com/watch?v=vOjsQc6u2ZA (last viewed May 3, 2024) at 1:22-1:24

16          95.    Buzzed Bull's "method of making an ice cream product…" includes "solid

17     ingredients, and the step of mechanically mixing includes mixing the solid ingredients in the open-

18     top container," and the ingredients involve "at least one of frozen fruit and hard candy." *See*

19     https://www.buzzedbullcreamery.com/menu/ (last viewed May 3, 2024).

20          96.    Buzzed Bull's "method of making an ice cream product…" includes a step of

21     "using a control valve to selectively dispense a cryogenic liquefied gas from a cryogenic tank into

22     the container through a line having an opening mounted above the ingredients of the ice cream

23     product…."

24

25

26



https://www.youtube.com/watch?v=vOjsQc6u2ZA (last viewed May 3, 2024) at 1:13-1:15
(red arrow annotation supplied)

| | |
|---|---|
| https://www.youtube.com/watch?v=vOjsQc6u2ZA (last viewed May 3, 2024) at 1:05-1:07 | https://www.youtube.com/watch?v=vOjsQc6u2ZA (last viewed May 3, 2024) at 1:09-1:12 |

97.    While "using a control valve to selectively dispense a cryogenic liquefied gas from a cryogenic tank into the container…," Buzzed Bull's "method of making an ice cream product…" creates "a sufficient amount of the liquified gas controlled by the control valve…" and that liquified gas controlled by the control valve "is introduced into the container to produce a visible amount of cryogenic vapor flowing from the open top of the container… ."

1

2

3

4

5

6

7

8

9

10



https://www.youtube.com/watch?v=2TSXHbM0PH8 (last viewed May 3, 2024) at 2:31-2:34.

11    98.    The "liquified gas" in Buzzed Bull's "method of making an ice cream product…"

12    is "liquified nitrogen" that is mixed in sufficient amount "to surround at least most of the

13    container."

14

15

16

17

18

19

20

21

22

23

24

25

26



https://www.buzzedbullcreamery.com/ (last viewed May 3, 2024).

99.     Buzzed Bull's "method of making an ice cream product…" involves "positioning the container in a place in a food service establishment where the vapor is visible to a customer" and "where the vapor can be touched by a customer."



https://www.youtube.com/shorts/tBoY3tUtlJo (last viewed May 3, 2024).



https://www.youtube.com/watch?v=qV-0YKTdGFs (last viewed May 3, 2024) at 0:29

100.     Buzzed Bull's "method of making an ice cream product…" includes a step of "mechanically mixing, with a powered mixer, the ingredients with the cryogenic liquefied gas in the open top container while flowing the cryogenic liquified gas through the line and through the opening mounted above the ingredients into the open top container containing the ingredients to produce the ice cream product…."

 

| https://www.youtube.com/watch?v=vOjsQc6u2ZA (last viewed May 3, 2024) at 1:05-1:07 | https://www.youtube.com/watch?v=vOjsQc6u2ZA (last viewed May 3, 2024) at 1:09-1:12 |
|---|---|

101.     Buzzed Bull's "method of making an ice cream product…" includes a "powered mixer" that has "a support having a bottom surface positioned on a work surface, the bottom surface being configured to support the container above the work surface."



https://www.youtube.com/watch?v=qV-0YKTdGFs (last viewed May 3, 2024) at 0:12 (annotations supplied).

27

102.    Buzzed Bull's "method of making an ice cream product…" includes a step of "freezing, with the cryogenic liquified gas, the ingredients while mixing the ingredients with the powered mixer to produce the ice cream product," and "transferring, after freezing, the ice cream product from the container to a serving container…."



https://www.buzzedbullcreamery.com/ (last viewed May 3, 2024).

103.    Buzzed Bull's "method of making an ice cream product…" also involves the "serving container containing the mixed frozen ingredients [being] passed to a customer."



www.buzzedbullcreamery.com/ (last viewed May 3, 2024).

104.    Despite the terms of the Buzzed Bull Agreement, Buzzed Bull itself or by and through its employees, franchisees, partners, subsidiaries, affiliates, agents, and/or licensees

1    makes, uses, sells, and offers to sell ice cream made by the '868 Patent methods using machines

2    that are not within the 1408 Main Street, Cincinnati, OH 45202 location.

3        105.    Despite the terms of the Buzzed Bull Agreement, Buzzed Bull itself or by and

4    through its employees, franchisees, partners, subsidiaries, affiliates, agents, and/or licensees uses

5    machines in the Buzzed Bull Stores outside of the 1408 Main Street, Cincinnati, OH 45202

6    location to practice the '868 Patent methods.

7        106.    Upon information and belief, Buzzed Bull does not own any patent or patent-

8    pending processes for methods and/or equipment for making ice cream using cryogenic liquified

9    gas.

10        107.    Buzzed Bull's actions on its own behalf and/or by and through its employees,

11    franchisees, partners, subsidiaries, affiliates, agents, and/or licensees were and/or are made with

12    knowledge that its methods practice the claims of the '868 Patent.

13        108.    Buzzed Bull knew, should have known, and/or willfully blinded itself to the fact

14    that Nitro, a competitive company, advertises its competitive cryogenic liquified gas ice cream

15    making equipment to the public, including consumers, prospective consumers, and competitors,

16    by referring to its patented process that produces "superior quality ice cream" and that in order for

17    others to practice the patented process a license from Nitro is required:

18          •  "The NitroCream G6 along with our Patented Process is designed for your store,

19            bar, or restaurant." (https://www.nitrocream.com/information-and-faq, last viewed

20            on May 3, 2024).

21          •  "With our Patented Process, you are able to produce a superior quality ice cream

22            dessert or cocktail unmatched by any in the industry."

23            (https://www.nitrocream.com/information-and-faq, last viewed on May 3, 2024).

24          •  "I have my own equipment from another company so do I need a license to use

25            the NitroCream process? If you use the NitroCream process, which is Patented,

26            then you need a license from NitroCream LLC.  Even if you use other equipment,

1        you may infringe upon our Patented Process."

2        (https://www.nitrocream.com/information-and-faq, last viewed on May 3, 2024).

3   Exhibit C.

4        109.    Despite Buzzed Bull's knowledge that its methods practice the claims of the '868

5   Patent, Buzzed Bull has represented to its franchisees, partners, subsidiaries, affiliates, agents,

6   and/or licensees as recently as its October 1, 2020 Buzzed Bull Franchise Disclosure Document

7   ("Buzzed Bull FDD") that, "[t]here are no pending patent applications that are material to the

8   franchise.  We hold no patents."  *See* Exhibit I at p. 42, Item 14.

9        110.    Despite Buzzed Bull's knowledge that its methods practice the claims of the '868

10  Patent, Buzzed Bull has failed and continues to fail to inform its franchisees and/or potential

11  licensees of the existence of the '868 Patent.  *See* id.

12       111.    Despite Buzzed Bull's knowledge that its methods practice the claims of the '868

13  Patent, Buzzed Bull has failed and continues to fail to inform its franchisees and/or potential

14  licensees of the materiality of the '868 Patent to the methods employed by Buzzed Bull's

15  franchisees and/or licensees.  *See* id.

16       112.    In its Franchise Agreement attached as an addendum to the Buzzed Bull FDD (the

17  "Buzzed Bull Franchise Agreement"), Buzzed Bull requires "Franchisee must operate the Business

18  in accordance with the System and Manual, as amended by us in our discretion. Franchisee or a

19  fully trained and qualified manager ("Manager") approved by Franchisor must participate

20  personally and full-time in the Business." *See* Exhibit I at p. 90 at §12.04.  Further, the Buzzed

21  Bull Franchisee Agreement states that, "Franchisee is prohibited from offering for sale any

22  products and services not authorized by Franchisor as being a part of the System." Id. at p. 90,

23  §12.06.

24       113.    Further, the Buzzed Bull Franchise Agreement requires that "Franchisor will

25  specify or approve certain equipment and supplies used in the Business, as provided elsewhere in

26  this Agreement." *See* id. at 79 at § 8.06.

1    114.   Nitro has suffered and continues to suffer a competitive injury as a result of Buzzed

2    Bull's willful patent infringements because franchisees interested in working with or becoming

3    licensees of Nitro would be led to believe that Buzzed Bull's infringing cryogenic liquified gas-

4    based ice cream making processes can be done without the need for a patent based on Buzzed

5    Bull's FDD misrepresentation that there is no patent material to its business.

6    115.   Nitro has suffered and continues to suffer a competitive injury as a result of Buzzed

7    Bull's acts because franchisees, licensees, agents, and/or partners interested in working with Nitro

8    would be led to believe that Buzzed Bull has authority to make ice cream using cryogenic liquified

9    gas in the same and substantially same way as Nitro, when the same is not true.

10    116.   Nitro has suffered and continues to suffer a competitive injury as a result of Buzzed

11    Bull's willful infringing acts, such as through loss of customers, franchisees, licensees, agents,

12    partners, sales, profits, and other cognizable competitive harms in the states and countries where

13    it has sold its equipment, licensed its '868 Patent methods, and/or has attempted to sell its

14    equipment and/or license its '868 Patent methods and the equipment to accomplish the same.

15                               **JURISDICTION AND VENUE**

16    117.   This Court has personal jurisdiction over Defendant Buzzed Bull based on the

17    forum selection clauses in ¶ 15 of the Buzzed Bull Agreement.

18    118.   This Court has personal jurisdiction over Defendant Chill-N based on the forum

19    selection clauses in ¶ 12 of the Chill-N Agreement.

20    119.   This Court also has specific personal jurisdiction based on the Letter signed by

21    David Gollik (the principal of Defendants CICF and CI) directed at Plaintiff in the forum state that

22    led to the breach of the Chill-N Agreement and the present case and controversy between Nitro

23    and Defendants CICF and CI.

24    120.   The forum selection clause in ¶15 of the Buzzed Bull Agreement mandating this

25    case take place in the state of Washington is valid, enforceable, and reasonable.

26

1    121.    The forum selection clause in ¶12 of the Chill-N Agreement mandating this case

2    take place in the state of Washington is valid, enforceable, and reasonable.

3    122.    By virtue of agreeing to the forum selection clause in ¶15 of the Buzzed Bull

4    Agreement, Defendant Buzzed Bull has waived its right to object to venue in this district under 28

5    U.S.C. §1400(b).  Therefore, venue as to Defendant Buzzed Bull is proper in this Court.

6    123.    By virtue of agreeing to the forum selection clause in ¶12 of the Chill-N Agreement,

7    Defendants CICF and CI have waived their right to object to venue in this district under 28 U.S.C.

8    §1400(b).  Therefore, venue as to Defendants CICF and CI is proper in this Court.

9                                               **COUNT I**

10                  **PATENT INFRINGEMENT UNDER § 271(a), (b), and (c)**

11                    (Against Defendant Chill-N and Defendant Buzzed Bull)

12    124.    Nitro realleges and incorporates herein each and every allegation contained in the

13    preceding paragraphs.

14    125.    Chill-N individually infringes at least claims 1, 2, 4, 6, 7, 9, 10, 11, 12, and 13 of

15    the '868 Patent by using the method steps claimed in the '868 Patent to operate, market, make,

16    use, offer for sale, and/or sell ice cream products made with cryogenic liquified gas in view of and

17    for consumption by the public without license from Nitro.

18    126.    Chill-N via the terms of its Franchise Agreement controls or directs employees,

19    franchisees, partners, subsidiaries, affiliates, agents, and/or licensees to infringe at least claims 1,

20    2, 4, 6, 7, 9, 10, 11, 12, and 13 of the '868 Patent by controlling and/or directing its employees,

21    franchisees, partners, subsidiaries, affiliates, agents, and/or licensees  to use the method steps

22    claimed in the '868 Patent to operate, market, make, use, offer for sale, and/or sell ice cream

23    products made with cryogenic liquified gas in view of and for consumption by the public without

24    license from Nitro.

25    127.    Chill-N via its Franchise Agreement induces its employees, franchisees, partners,

26    subsidiaries, affiliates, agents, and/or licensees  to infringe at least claims 1, 2, 4, 6, 7, 9, 10, 11,

1  12, and 13 of the '868 Patent by having its employees, franchisees, partners, subsidiaries, affiliates,

2  agents, and/or licensees  use the method steps claimed in the '868 Patent to operate, market, make,

3  use, offer for sale, and/or sell ice cream products made with cryogenic liquified gas in view of and

4  for consumption by the public without license from Nitro.

5       128.    Via its Franchise Agreement and operations manuals, training, and other

6  instruction/guidance, Chill-N induces its employees, franchisees, partners, subsidiaries, affiliates,

7  agents, and/or licensees  to infringe at least claims 1, 2, 4, 6, 7, 9, 10, 11, 12, and 13 of the '868

8  Patent with knowledge that these induced acts of operating, marketing, offering for sale, and

9  selling ice cream products made with cryogenic liquified gas infringe at least the aforementioned

10  method steps claimed in the '868 Patent.

11       129.    By virtue of specifying and approving the equipment and supplies to be used by its

12  employees, franchisees, partners, subsidiaries, affiliates, agents, and/or licensees to infringe at least

13  claims 1, 2, 4, 6, 7, 9, 10, 11, 12, and 13 of the '868 Patent with knowledge that these acts of

14  operating, marketing, offering for sale, and selling ice cream products made with cryogenic

15  liquified gas infringe at least the aforementioned method steps claimed in the '868 Patent, Chill-N

16  engages in contributory infringement of the '868 Patent.

17       130.    The specific equipment and systems specified for use by Chill-N's employees,

18  franchisees, partners, subsidiaries, affiliates, agents, and/or licensees have no substantial non-

19  infringing uses.

20       131.    The specific equipment and systems specified for use by Chill-N's employees,

21  franchisees, partners, subsidiaries, affiliates, agents, and/or licensees were especially designed to

22  practice the method steps claimed in the '868 Patent.

23       132.    Chill-N, by use of the signage, "operates under patent & patent pending processes,"

24  https://www.youtube.com/watch?v=IqSN4icsdbk (last viewed May 3, 2024) at 2:46-2:482:48, but

25  having only ever been a licensee of the '868 Patent, admits the methods it controls, directs, and/or

26

33

1    induces to be practiced by its employees, franchisees, partners, subsidiaries, affiliates, agents,

2    and/or licensees practice the method steps claimed in the '868 Patent.

3        133.    Chill-N has had actual knowledge of the '868 Patent at all times relevant to this

4    controversy but continues to individually, jointly, and indirectly infringe the methods claimed in

5    the '868 Patent despite such knowledge.

6        134.    Chill-N has had actual knowledge that the activities of its employees, franchisees,

7    partners, subsidiaries, affiliates, agents, and/or licensees infringe the method claims of the '868

8    Patent at all times relevant to this controversy and has failed to stop any individual, joint, and/or

9    indirect infringement of the methods claimed in the '868 Patent in spite of such knowledge.

10       135.    Chill-N's infringements of the '868 Patent have been done in bad faith, including

11   trying to conceal from franchisees, licensees, and/or potential franchisees and/or licensees the fact

12   that the '868 Patent is material to its processes.

13       136.    Chill-N's infringements of the '868 Patent have been done in bad faith, including

14   trying to conceal from franchisees, licensees, and/or potential franchisees and/or licensees the fact

15   that the "Patent" to which the Chill-N Franchisee Agreement refers is Nitro's '868 Patent.

16       137.    Chill-N's infringements of the '868 Patent have been done in bad faith, including

17   knowingly misleading the public, including customers, franchisees, licensees, and/or potential

18   franchisees and/or licensees, to believe that the methods Chill-N instructs to be practiced at each

19   of its franchises are protected by a patent and/or a pending patent owned by Chill-N, when the

20   same is demonstrably false.

21       138.    Chill-N's infringements of the '868 Patent have been done in bad faith, including

22   knowingly misleading the public, including customers, franchisees, licensees, and/or potential

23   franchisees and/or licensees, to believe that the methods Chill-N instructs to be practiced at each

24   of its franchises are protected by a patent and/or a pending patent licensed by Chill-N, when the

25   same is demonstrably false.

26

1      139.    Chill-N's infringements of the '868 Patent have been in willful disregard of Nitro's

2  patent rights, making this an exceptional case, and entitling Nitro to enhanced damages pursuant

3  to 35 U.S.C. § 284, and to recovery of their attorney fees and costs incurred in prosecuting this

4  action pursuant to 35 U.S.C. § 285.

5      140.    The aforesaid infringing activity has caused damage to Nitro, including loss of

6  profits from sales they would have made but for Chill-N's willful patent infringements. Unless

7  enjoined, the aforesaid infringing activity will continue, causing irreparable injury to Nitro for

8  which there is no adequate remedy at law.

9      141.    Buzzed Bull individually infringes at least claims 1, 2, 4, 6, 7, 9, 10, 11, and 12 of

10  the '868 Patent by using the method steps claimed in the '868 Patent to operate, market, make,

11  use, offer for sale, and/or sell ice cream products made with cryogenic liquified gas in view of and

12  for consumption by the public without license from Nitro.

13      142.    Buzzed Bull via the terms of its Franchise Agreement controls or directs its

14  employees, franchisees, partners, subsidiaries, affiliates, agents, and/or licensees  to infringe at

15  least claims 1, 2, 4, 6, 7, 9, 10, 11, and 12 of the '868 Patent by controlling and/or directing its

16  employees, franchisees, partners, subsidiaries, affiliates, agents, and/or licensees  to use the

17  method steps claimed in the '868 Patent to operate, market, make, use, offer for sale, and/or sell

18  ice cream products made with cryogenic liquified gas in view of and for consumption by the public

19  without license from Nitro.

20      143.    Buzzed Bull via its Franchise Agreement induces its employees, franchisees,

21  partners, subsidiaries, affiliates, agents, and/or licensees  to infringe at least claims 1, 2, 4, 6, 7, 9,

22  10, 11, and 12 of the '868 Patent by having its employees, franchisees, partners, subsidiaries,

23  affiliates, agents, and/or licensees  use the method steps claimed in the '868 Patent to operate,

24  market, make, use, offer for sale, and/or sell ice cream products made with cryogenic liquified gas

25  in view of and for consumption by the public without license from Nitro.

26

144.    Via its Franchise Agreement and operations manuals, training, and other instruction/guidance, Buzzed Bull induces its employees, franchisees, partners, subsidiaries, affiliates, agents, and/or licensees  to infringe at least claims 1, 2, 4, 6, 7, 9, 10, 11, and 12 of the '868 Patent with knowledge that these induced acts of operating, marketing, offering for sale, and selling ice cream products made with cryogenic liquified gas infringe at least the aforementioned method steps claimed in the '868 Patent.

145.    By virtue of specifying and approving the equipment and supplies to be used by its employees, franchisees, partners, subsidiaries, affiliates, agents, and/or licensees to infringe at least claims 1, 2, 4, 6, 7, 9, 10, 11, and 12 of the '868 Patent with knowledge that these acts of operating, marketing, offering for sale, and selling ice cream products made with cryogenic liquified gas infringe at least the aforementioned method steps claimed in the '868 Patent, Buzzed Bull engages in contributory infringement of the '868 Patent.

146.    The specific equipment and systems specified for use by Buzzed Bull's employees, franchisees, partners, subsidiaries, affiliates, agents, and/or licensees have no substantial non-infringing uses.

147.    The specific equipment and systems specified for use by Buzzed Bull's employees, franchisees, partners, subsidiaries, affiliates, agents, and/or licensees were especially designed to practice the method steps claimed in the '868 Patent.

148.    Buzzed Bull has had actual knowledge of the '868 Patent at all times relevant to this controversy but continues to individually, jointly, and indirectly infringe the methods claimed in the '868 Patent despite such knowledge.

149.    Buzzed Bull has had actual knowledge that the activities of its employees, franchisees, partners, subsidiaries, affiliates, agents, and/or licensees infringe the method claims of the '868 Patent at all times relevant to this controversy and has failed to stop any individual, joint, and/or indirect infringement of the methods claimed in the '868 Patent in spite of such knowledge.

150.    Buzzed Bull's infringements of the '868 Patent have been in willful disregard of Nitro's patent rights, making this an exceptional case, and entitling Nitro to enhanced damages pursuant to 35 U.S.C. § 284, and to recovery of their attorney fees and costs incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

151.    The aforesaid infringing activity has caused damage to Nitro, including loss of profits from sales they would have made but for Buzzed Bull's willful patent infringements. Unless enjoined, the aforesaid infringing activity will continue, causing irreparable injury to Nitro for which there is no adequate remedy at law.

**COUNT II**

**FALSE PATENT MARKING UNDER 35 U.S.C. § 292**

(Against Defendant Chill-N)

152.    Nitro realleges and incorporates herein each and every allegation contained in the preceding paragraphs.

153.    Under the leadership and authority of Golik, Defendant Chill-N represents to its employees, franchisees, partners, subsidiaries, affiliates, agents, and/or licensees that Chill-N "operates under patent and patent pending processes."

154.    Under the leadership and authority of Golik, Defendant Chill-N represents to its customers, competitors, and potential customers and/or potential franchisees that Chill-N "operates under patent and patent pending processes."

155.    Chill-N has never owned a patent for any process used by it or its employees, franchisees, partners, subsidiaries, affiliates, agents, and/or licensees.

156.    Chill-N has never filed a patent application for any process used by it or its employees, franchisees, partners, subsidiaries, affiliates, agents, and/or licensees.

157.    Golik has known since at least October 17, 2018 that Chill-N does not own a patent for any process used by it or its employees, franchisees, partners, subsidiaries, affiliates, agents, and/or licensees.

158.   Golik has known since at least July 6, 2020 that Chill-N does not own a patent for any process used by it or its employees, franchisees, partners, subsidiaries, affiliates, agents, and/or licensees.

159.   Golik has known since at least July 6, 2020 that Chill-N is not a licensee of a patent for any process used by it or its employees, franchisees, partners, subsidiaries, affiliates, agents, and/or licensees.

160.   Golik has known since at least October 17, 2018 that Chill-N does not own a pending patent for any process used by it or its employees, franchisees, partners, subsidiaries, affiliates, agents, and/or licensees.

161.   Golik has known since at least July 6, 2020 that Chill-N does not own a pending patent for any process used by it or its employees, franchisees, partners, subsidiaries, agents, and/or licensees.

162.   Golik has known since at least July 6, 2020 that Chill-N is not a licensee of a pending patent for any process used by it or its employees, franchisees, partners, subsidiaries, affiliates, agents, and/or licensees.

163.   Golik has known since at least October 17, 2018 that Chill-N has never owned a patent application for any process used by it or its employees, franchisees, partners, subsidiaries, affiliates, agents, and/or licensees.

164.   Golik has known since at least July 6, 2020 that Chill-N has never owned a patent application for any process used by it or its employees, franchisees, partners, subsidiaries, affiliates, agents, and/or licensees.

165.   Since October 17, 2018, Chill-N's advertising that it presents to the public, including customers, potential customers, and potential franchisees, which states that Chill-N "operates under patent and patent pending processes" is knowingly false.

166.    Since July 6, 2020, Chill-N's advertising that it presents to the public, including customers, potential customers, and potential franchisees, which states that Chill-N "operates under patent and patent pending processes" is knowingly false.

167.    Chill-N solicits and retains franchisees in the same geographic areas where Nitro solicits and retains licensees of its '868 Patent methods.

168.    Chill-N's false marking of its stores where infringement of the '868 Patent takes place with the advertising "operates under patent and patent pending processes" causes competitive injury to Nitro because it deceives potential franchisees and potential licensees from doing business with Nitro.

169.    Chill-N perpetuates its false marking in its stores to its franchisees and potential franchisees and/or potential licensees by mandating its employees, current franchisees, partners, subsidiaries, affiliates, agents, and/or licensees pay an IP Fee according to the Chill-N Franchise Agreement, when in reality, Chill-N has no pending patent application or patent under which it operates its infringing cryogenic liquified gas-based ice cream making processes.

170.    Chill-N's false marking of its stores where infringement of the '868 Patent takes place with the advertising "operates under patent and patent pending processes" causes competitive injury to Nitro because it deceives customers and potential customers from buying cryogenic liquified gas-based ice cream products from Nitro's licensees who legitimately utilize the '868 Patent.

171.    Chill-N manifests its intent to deceive franchisees, potential franchisees, potential licensees, customers, and potential customers by knowingly mandating the payment of an IP Fee and knowingly mandating franchisees to publicize the false advertising that Chill-N's cryogenic liquified gas-based ice cream making process "operates under patent and patent pending processes," when management at Chill-N, including Golik, know that Chill-N has no license or ownership of such patent or pending patent related to its infringing cryogenic liquified gas-based ice cream making process.

172.     Chill-N manifests its intent to deceive by stating to the public via its Chill-N FDD that it has no patents for its process, but then advertises that it "operates under patent and patent pending processes" and requires its franchisees and/or potential franchisees to pay an IP Fee that includes "the Patent."

173.     Upon information and belief, the intent of Chill-N to deceive the public with its false patent marking is with authority from at least Golik, directly or indirectly through other managing members of Chill-N.

174.     This Court should order Chill-N to pay $500 for every product that has been made by a process that was falsely marked as "operate[ing] under patent and patent pending processes".

175.     This Court should order Chill-N to pay $500 for every product that has been made by a franchisee that paid an IP Fee to use a process that Chill-N falsely marks as "operate[ing] under patent and patent pending processes".

176.     This Court should order Chill-N to pay $500 for every product that has been made by any third party at its instruction and/or direction that pays to Chill-N an IP Fee to use a process that Chill-N falsely marks as "operate[ing] under patent and patent pending processes".

**COUNT III**

**FALSE ADVERTISING UNDER SECTION 43(a) OF THE LANHAM ACT**

(Against Defendant Chill-N)

177.     Nitro realleges and incorporates herein each and every allegation contained in the preceding paragraphs.

178.     Nitro and Chill-N are competitors.

179.     Chill-N's association of its unpatented process with the phrase "operates under patent and patent pending processes" constitutes a false or misleading representation of fact regarding the patent status or patent-pending status of its cryogenic liquified gas-based ice cream making process.

40

180.     Chill-N's demand that its franchisees and potential franchisees pay an IP Fee to use a "Patent" when Chill-N's cryogenic liquified gas-based ice cream making process is not practiced under license or ownership of any patent or pending patent application is a false or misleading representation of fact regarding the company's patent status for its cryogenic liquified gas-based ice cream making process.

181.     Chill-N's use of false or misleading representations of fact in commercial advertising or promotion misrepresents the nature, characteristics, or qualities of Chill-N's cryogenic liquified gas-based ice cream making process and the product(s) made thereby.

182.     Chill-N's use of false or misleading representations of fact has the tendency to deceive a substantial portion of the target consumer or actually deceives the target consumers.

183.     Chill-N's use of false or misleading representations of fact has the tendency to deceive a substantial portion of the target franchisees or actually deceives the target franchisees.

184.     Chill-N's false or misleading representations of fact are material because they are likely to influence the purchasing decision of the target consumers.

185.     Chill-N's false or misleading representations of fact are material because they are likely to influence the purchasing decision of the target franchisees.

186.     Chill-N's falsely or misleadingly represented processes are advertised, promoted, sold, and distributed in interstate commerce.

187.     Nitro has been and continues to be injured by Chill-N's false or misleading representations of fact through the diversion of sales or loss of goodwill.

188.     Nitro has been and continues to be injured by Chill-N's false or misleading representations of fact through loss of potential licensees of its goods used to practice the '868 Patented methods.

189.     Chill-N knows or willfully blinds itself from admitting that its representations of fact are false or misleading.

190.   Chill-N willfully blinds itself from the fact that it admits it has no patents in its Chill-N FDD but yet charges its franchisees an IP Fee that includes payment for use of a patent that it does not own or license.

191.   Chill-N's false or misleading representations of fact were done with bad faith and malice or reckless indifference to the interests of Nitro, Chill-N's consumers, Chill-N's franchisees, Chill-N's potential licensees, Nitro's consumers, Nitro's potential franchisees, and Nitro's potential licensees.

192.   Chill-N's bad faith false or misleading representations of fact regarding the patented status of its products makes this an exceptional case within the meaning of 15 U.S.C. § 1117.

193.   Chill-N continues to make false or misleading representations of fact regarding the patent status and/or patent-pending status of its cryogenic liquified gas-based ice cream making process and the product(s) made thereby and will continue to do so unless enjoined by this Court as provided by 15 U.S.C. § 1116.

194.   Nitro is entitled to an award of Chill-N's profits due to sales of the falsely or misleadingly represented products, any damages sustained by Nitro, and the costs of the action, pursuant to 15 U.S.C. § 1117.

**COUNT IV**

**UNFAIR COMPETITION UNDER WASHINGTON STATE LAW**

(Against Defendant Chill-N)

195.   Nitro realleges and incorporates herein each and every allegation contained in the preceding paragraphs.

196.   As result of its longstanding position as a leading provider of cryogenic liquified gas-based equipment to make cryogenic liquified gas-based ice cream, Nitro has acquired wide recognition among cryogenic liquified gas-based ice cream vendors and establishments selling the same.  For example, Nitrocream's own Rob Kennedy was featured in the 2011 text Modernist

1 Cuisine – The Art and Science of Cooking Volume 1 – History and Fundamentals.  On page 63 of

2 that text, Kennedy was praised what "appear[ed] to be the first commercially available piece of

3 liquid nitrogen cooking equipment.  It makes ice cream to order, but in relatively large batches.

4 His company, NitroCream LLC, still produces each machine by hand, selling them mostly to cafes

5 and ice cream shops."

6       197.    Because of the superb quality ice cream made under license to Nitro's '868 Patent

7 methods and equipment used to create the same, consumers, including licensees and franchisees,

8 have come to associate Nitro with exceptional cryogenic liquified gas-based ice cream and ice

9 cream making processes as a result of practicing its '868 Patented methods.

10       198.    By representing that its cryogenic liquified gas-based ice cream making process

11 "operates under patent and patent pending processes," Chill-N has made false and misleading

12 representations to Nitro's current and prospective customers and licensees.

13       199.    Chill-N's actions described above include false and misleading descriptions or

14 representations in commercial advertising and promotion that its cryogenic liquified gas-based ice

15 cream process and products made thereby "operate[] under patent and patent pending processes."

16

17

18

19

20

21

22

23

24

25

26

200.    For example, one consumer posted a review of Chill-N on Yelp dated February 26, 2024 in which it was stated, "Best ice cream I've ever had!"  The posting was accompanied by the following photograph taken at Chill-N's Coconut Grove, Florida establishment located at 3415 Main Highway Miami, Florida 33133.  Chill-N's Coconut Grove Florida establishment contained the below publicly facing signage, "operates under patent and patent pending processes," placed near the consumer check-out and in front of where Chill-N's processes take place:



https://www.yelp.com/user_details?userid=YxL4_BcMMaoZh4i44JLAtQ (last visited May 10, 2024).

201.    As another example, a consumer posted a review of Chill-N on Yelp dated March 20, 2021 in which it was stated, "The ice-cream here had to be the creamiest of them all.  It was beyond delicious and the taste was so rich."  The posting was accompanied by the following photograph taken at Chill-N's Coral Springs establishment located at 4356 North State Rd. 7 Coral Springs, Florida 33073.  Chill-N's Coral Springs, Florida establishment contained the below

1  publicly facing signage, "operates under patent and patent pending processes," placed near the

2  consumer check-out and in front of where Chill-N's processes take place:



15  https://www.yelp.com/biz_photos/chill-n-nitrogen-ice-cream-coral-springs-coral-springs-

16  3?select=xV2LCaO-ITlKmPtCP5uV9w (last visited May 10, 2024).

17      202.    As yet another example, a consumer posted a review of Chill-N on Yelp dated May

18  24, 2019 in which it was stated, "I'm glad that they have opened one location in Cleveland! Now,

19  I don't need to travel to Florida to get one.  Suggesting to try this place!"  The posting was

20  accompanied by the following photograph taken at Chill-N's Fort Lauderdale Florida

21  establishment located at 2422 N Federal Hwy, Fort Lauderdale Florida, 33305.  Chill-N's Fort

22  Lauderdale Florida establishment contained the below publicly facing signage, "operates under

23  patent and patent pending processes," placed near the consumer check-out and in front of where

24  Chill-N's processes take place:

25

26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15



16 https://www.yelp.com/biz_photos/chill-n-nitrogen-ice-cream-fort-lauderdale-fort-lauderdale-

17 4?select=hJ4h9piJ5-RaDEg98n9z4g&userid=8YV5I01YI5NIw85tUBElVg (last visited May 10,

18 2024).

19       203.    As yet another example, a consumer posted a review of Chill-N on Yelp dated

20 February 24, 2019 accompanied by the following photograph taken at Chill-N's Pinecrest Florida

21 establishment located at 8271 SW 124th St Miami, Florida 33156.  Chill-N's Pinecrest Florida

22 establishment contained the below publicly facing signage, "operates under patent and patent

23 pending processes," placed near the consumer check-out and in front of where Chill-N's processes

24 take place:

25

26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16  https://www.yelp.com/user_local_photos?select=5MvCJnOGKkB6MHGBVnW91g&userid=cQ

17  LKDrqqoE4HUVcbvPKkQQ (last visited May 10, 2024).

18      204.    As a still further example, a consumer posted a review of Chill-N on Yelp dated

19  January 3, 2022 in which it was stated, "Never had ice cream that is so smooth! Gotta come back

20  again!"  That statement was accompanied by the following photograph taken at Chill-N's South

21  Miami Florida establishment located at 7316 SW 57th Ave. South Miami, Florida 33143.  Chill-

22  N's South Miami Florida establishment contained the below publicly facing signage, "operates

23  under patent and patent pending processes," placed near the consumer check-out and in front of

24  where Chill-N's processes take place:

25

26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17  https://www.yelp.com/biz_photos/chill-n-nitrogen-ice-cream-south-miami-south-

18  miami?select=9_rCwEZ23K0iH1WboDWBDw (last visited May 10, 2024).

19        205.    A consumer posted a review of Chill-N on Yelp dated April 28, 2021 accompanied

20  by the following photograph taken at Chill-N's Weston Florida establishment located at 2238

21  Weston Rd. Weston, Florida 33326.  Chill-N's Weston Florida establishment contained the below

22  publicly facing signage, "operates under patent and patent pending processes," placed near the

23  consumer check-out and in front of where Chill-N's processes take place:

24

25

26



https://www.yelp.com/biz_photos/chill-n-nitrogen-ice-cream-weston-weston-5?select=5ceIRqyW6znmY_kRh5vErQ&userid=9UT2wYVCVsJQMOQ9_jCUEw (last visited May 10, 2024).

206.    In Florida, as well as elsewhere in this district, Nitro advertises to potential licensees that, "[t]he NitroCream G6 along with our Patented Process is designed for your store, bar, or restaurant." *See* Exhibit C.

207.    In Florida, as well as elsewhere in this district, Nitro advertises to potential licensees that, "[w]ith our Patented Process, you are able to produce a superior quality ice cream dessert or cocktail unmatched by any in the industry." *See* Exhibit C.

208.    Chill-N's actions constitute unfair and deceptive practices in commerce under Washington law.

209.    Chill-N's actions have and continue to negatively affect the public interest, including potential cryogenic liquified gas-based ice cream makers, from all around the United

1  States by deceiving them into believing that Chill-N's establishments in which they practice

2  cryogenic liquified gas-based ice cream making processes originates from, or is associated with,

3  Nitro, or that Chill-N owns the patent or pending patent in such processes, when the same is false.

4      210.    As a direct consequence of Chill-N's unlawful acts and practices, Nitro has

5  suffered, will continue to suffer and/or is likely to suffer damage to its business reputation and

6  goodwill, for which Nitro is entitled to relief.

7                              **COUNT V**

8                       **BREACH OF CONTRACT**

9            (Against Defendant Chill-N and Defendant Buzzed Bull)

10     211.    Nitro realleges and incorporates herein each and every allegation contained in the

11  preceding paragraphs.

12     212.    The Chill-N Agreement between Defendant Chill-N and Nitro is a valid and

13  enforceable agreement.

14     213.    On July 6, 2020, Chill-N terminated the Chill-N Agreement on the basis that

15  "NitroCream's patent was found invalid on July 12, 2019 and that NitroCream agrees with this

16  finding due to the subsequent changes it made to the original claims."

17     214.    No court or administrative body found NitroCream's claims "invalid" on July 12,

18  2019.

19     215.    The claims of the '868 Patent (Exhibit A) are not invalid, not unpatentable, and are

20  enforceable against Chill-N and others, including Buzzed Bull.

21     216.    After being notified that the '868 Patent claims were neither invalid nor

22  unpatentable by email from Nitro on December 2, 2020, Chill-N maintained its termination of the

23  Chill-N Agreement by Confidential Information

24  ██████████████████████████e.

25     217.    All uses of the '868 Patent methods by Chill-N, Chill-N's franchisees, and Chill-

26  N's licensees since July 6, 2020 are in material breach of at least § 6 of the Chill-N Agreement.

218. Since at least December 2, 2020, Chill-N, Chill-N's franchisees, and Chill-N's licensees have been in material breach of the terms of the Chill-N Agreement.

219. Chill-N materially breached the terms of the Chill-N Agreement on July 6, 2020.

220. Chill-N agreed in §7 of the Chill-N agreement to compensate Nitro from all damages Nitro suffers from unauthorized use of the Patent by Chill-N's franchisees.

221. Nitro has suffered damages as a result of the material breaches to the Chill-N Agreement caused by or as consequence of the acts, omissions, and failures of Chill-N, Chill-N's franchisees, and Chill-N's licensees.

222. Nitro has suffered damages due to the unauthorized use of the '868 Patent methods by Chill-N, Chill-N's franchisees, and Chill-N's licensees.

223. Nitro has suffered damages due to the unauthorized use of the '868 Patent methods by Chill-N, Chill-N's franchisees, and Chill-N's licensees despite Nitro's good faith efforts to obtain Chill-N's compliance with he Chill-N Agreement.

224. Chill-N's breach of the Chill-N Agreement has also resulted in harm to Nitro, including the harms described above, the relief for which cannot be adequately calculated at law and for which an injunction is required.

225. The Buzzed Bull Agreement between Defendant Buzzed Bull and Nitro is a valid and enforceable agreement.

226. Buzzed Bull agreed Confidential Information ███████████████████████████████████████████████████████████████████████████████.

227. Buzzed Bull has never given written notice to Nitro to Confidential Information ████████████████████████████████████████.

228. Buzzed Bull has no basis to have terminated the license.

229. All uses of the '868 Patent methods by Buzzed Bull, Buzzed Bull's franchisees, and Buzzed Bull's licensees ██████Confidential Information██████ ████████ are in material breach of at least §§ 2 and 3 of the Buzzed Bull Agreement.

230. Nitro has suffered damages as a result of the material breaches to the Buzzed Bull Agreement caused by or as consequence of the acts, omissions, and failures of Buzzed Bull, Buzzed Bull's franchisees, and Buzzed Bull's licensees.

231. Nitro has suffered damages due to the unauthorized use of the '868 Patent methods by Buzzed Bull, Buzzed Bull's franchisees, and Buzzed Bull's licensees.

232. Nitro has suffered damages due to the unauthorized use of the '868 Patent methods by Buzzed Bull, Buzzed Bull's franchisees, and Buzzed Bull's licensees.

233. Buzzed Bull's breach of the Buzzed Bull Agreement has also resulted in harm to Nitro, including the harms described above, the relief for which cannot be adequately calculated at law and for which an injunction is required.

## DEMAND FOR A JURY TRIAL

234. Plaintiff respectfully requests a jury trial in this action on all issues so triable.

## PRAYER FOR RELIEF

Based on the foregoing, Plaintiff prays for the following relief against Defendants:

1. Judgment in Plaintiff's favor against Defendants on all causes of action alleged herein;

2. A preliminary and permanent injunction to enjoin Defendants, their agents, servants, employees, attorneys, successors and assigns, and all persons, firms, and corporations acting in concert with them, including distributors, customers, from making, using, offering for sale, or selling processes and products made thereby and which are claimed in the '868 Patent;

3. A finding that Defendants' infringement of the '868 Patent to be willful;

4. A payment of $500 per use of every falsely marked process practiced by Defendants under 35 U.S.C. § 292;

5.     An injunction against Defendants directing the removal and destruction of all unauthorized liquid-nitrogen based ice cream making equipment and products;

6.     An Order mandating Defendants to pay Plaintiff compensatory damages based on evidence submitted at trial with interest at the highest rate allowable by law;

7.     An Order mandating Defendants to pay Plaintiff consequential, exemplary, and actual damages or disgorgement of Defendants' profits unjustly obtained based on competent and admissible evidence at trial with interest at the highest rate allowable by law;

8.     An Order mandating Defendants to pay Plaintiff enhanced damages;

9.     An Order mandating Defendants to pay Plaintiff's reasonable attorneys' fees and allowable court costs and expenses; and

10.     All other such relief to Plaintiff under law and equity as the Court deems just and proper.


DATED this 11th day of June, 2024.



By:  s/ W. Sean Hornbrook, WSBA No. 31260
W. Sean Hornbrook
Peterson Law, PLLC
14205 SE 36th Street
Suite 100
Bellevue, WA 98006
(425) 522-8290
sean@brynpetersonlaw.com

Joseph A. Farco
(Pro Hac Vice Motion To Be Filed)
Norris McLaughlin, P.A.
7 Times Square, 21st Floor
New York, NY 10036
(212) 808-0700
JFarco@norris-law.com
Attorneys for Plaintiff, NitroCream LLC